USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/13/2025

PRO SE OFFICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Michael Buxbaum,     )
    Plaintiff     )

  -against-     )     Case Docket No. 7:25-cv-02088

County of Rockland, New York     )
    Defendant     )     **Memorandum of Law**

MEMO ENDORSED

    Plaintiff's Michael Buxbaum's motion is based upon the False Claims Act (see: U.S. Code Title 31 Money and Finance, Subtitle III Financial Management, Chapter 37 Claims, Subchapter III Claims Against the United States Government, specifically § 3729 - False claims: (a) Liability for Certain Acts, (b) Definitions, (c) Exemption From Disclosure, and (d) Exclusion.) with judicial interpretation and precedent from the United States Supreme Court (see: UNITED STATES, ex rel. Irwin EISENSTEIN, Petitioner, v. CITY OF NEW YORK, NEW YORK, et al., Argued April 21, 2009 and Decided June 8, 2009) that states:

    "The FCA establishes a scheme that permits either the Attorney General, § 3730(a), or a private party, § 3730(b), to initiate a civil action alleging fraud on the Government."

    Defendant County of Rockland, New York a municipal corporation fraudulently spends money on the compensation of county employees by issuing fraudulent reports and fraudulent audited financial statements from three (3) different auditors in four (4) years. The revenues of the Defendant County of Rockland, New York are quite substantial for a municipal corporation with a geographic size that is 173.4 square miles and the smallest NYS county by land area with revenues in excess of $2,780,206,261 dollars from January 1, 2020 through December 31, 2023 including the discreetly presented component unit of Rockland Community College of which the community college acknowledged the Defendant's County of Rockland, New York's fraud with making False Claims to the United States Federal Government and New York State Government

in violation of the New York State False Claims Act and spending such money fraudulently (See: Judicial Notice). The Fund Revenues are $2,780,206,261 including the New York State Aid of $389,264,657 and the Federal Aid of $242,363,633 with presentation in the fraudulent audited financial statements for the years:

|  | $2,780,206,261 | $389,264,657 | $242,363,633 |
|---|---|---|---|
| December 31, 2020 | $612,340,338 | State $95,212,615 | Fed $53,796,877 |
| December 31, 2021 | $675,470,150 | State $79,723,830 | Fed $54,397,597 |
| December 31, 2022 | $737,956,123 | State $107,072,275 | Fed $66,983,955 |
| December 31, 2023 | $754,439,650 | State $107,249,937 | Fed $67,185,204 |

The largest of the five (5) towns Defendant Town of Clarkstown located in the jurisdiction of the municipal corporation of the Defendant County of Rockland, New York has Fund Revenues for the same four (4) years 2020 through 2023 of $643,804,882 including the New York State Aid of $28,282,347 and the Federal Aid of $16,116,620 from presentation with the fraudulent audited financial statements:

|  | $643,804,882 | $28,282,347 | $16,116,620 |
|---|---|---|---|
| December 31, 2020 | $144,607,239 | State $6,303,253 | Fed $853,497 |
| December 31, 2021 | $160,333,786 | State $8,271,618 | Fed $3,935,962 |
| December 31, 2022 | $165,212,982 | State $6,068,203 | Fed $5,702,381 |
| December 31, 2023 | $173,650,875 | State $7,639,273 | Fed $5,624,780 |

Defendant County of Rockland, New York including the Defendant Town of Clarkstown had Fund Revenues for the four (4) years of 2020, 2021, 2022, and 2023 of $3,424,011,143 BILLION dollars with State Aid of $417,547,004 and Federal Aid of $258,480,253 with approximately the same number of agencies and employees.

In addition, there were no significant increases in capital improvements from calendar years 2020 through 2023 considering $3,424,011,143 dollars in revenue from the presentation in the Defendant's County of Rockland, New York's fraudulent audited financial statements for the years:

|  | Capital Assets | Nondepreciable | Depreciable |
|---|---|---|---|
| December 31, 2020 | $755,053,157 | 193,569,945 | 561,483,212 |
| December 31, 2021 | $753,673,437 | 209,024,687 | 543,648,750 |
| December 31, 2022 | $760,090,211 | 209,072,322 | 551,017,889 |
| December 31, 2023 | $782,587,219 | 259,009,623 | 523,577,596 |

and Defendant's Town of Clarkstown's fraudulent audited financial statements for the years:

|  | Capital Assets | Nondepreciable | Depreciable |
|---|---|---|---|
| December 31, 2020 | $178,189,195 | 51,019,968 | 127,169,227 |
| December 31, 2021 | $171,980,888 | 50,579,389 | 121,401,499 |
| December 31, 2022 | $186,058,890 | 50,579,389 | 135,479,501 |
| December 31, 2023 | $189,397,731 | 50,579,389 | 138,818,342 |

with a significant and beyond a reasonable doubt indication of fraud in spending with False Claims made to the United States of America and the State of New York for money and spending such money fraudulently. This type of Fraud and False Claims was journalized by Nobel Peace Prize Winner Milton Friedman with "<u>A Friedman doctrine-- The Social Responsibility of Business Is to Increase Its Profits</u>", of which the article states:

"This process raises political questions on two levels: principle and consequences. On the level of political principle, the imposition of taxes and the expenditure of tax proceeds are governmental functions. We have established elaborate constitutional, parliamentary and judicial provisions to control these functions, to assure that taxes are imposed so far as possible in accordance with the preferences and desires of the public— after all, "taxation without representation" was one of the battle cries of the American Revolution. We have a system of

checks and balances to separate the legislative function of imposing taxes and enacting expenditures from the executive function of collecting taxes and administering expenditure programs and from the judicial function of mediating disputes and interpreting the law.

Here the businessman—self-selected or appointed directly or indirectly by stockholders—is to be simultaneously legislator, executive and jurist. He is to decide whom to tax by how much and for what purpose, and he is to spend the proceeds—all this guided only by general exhortations from on high to restrain inflation, improve the environment, fight poverty and so on and on.

The whole justification for permitting the corporate executive to be selected by the stockholders is that the executive is an agent serving the interests of his principal. This justification disappears when the corporate executive imposes taxes and spends the proceeds for "social" purposes. He becomes in effect a public employe, a civil servant, even though he remains in name an employee of private enterprise. On grounds of political principle, it is intolerable that such civil servants—insofar as their actions in the name of social responsibility are real and not just window-dressing—should be selected as they are now. If they are to be civil servants, then they must be selected through a political process. If they are to impose taxes and make expenditures to foster "social" objectives, then political machinery must be set up to guide the assessment of taxes and to determine through a political process the objectives to be served.

Defendant County of Rockland, New York a municipal corporation that is not a business fraudulently overpaid and overpays county employees with a salary and compensation that is more then local area business and other employers in the smallest jurisdictional county in the State of New York considering the salary and compensation of two (2) pensions for government civil service employment that does not contribute to an Earnings Per Share or a net profit since the county government is not a business within the definition of Capitalism.

Defendant County of Rockland, New York the municipal corporation with the enforcement of the nonbusiness agency of the Rockland County Sheriff's Department issued fraudulent audited financial statements that report property tax revenues in excess of half a billion dollars or specifically $565,132,781 not including calendar year 2024 with reporting the line item:

    2020 Property taxes, levied for general purposes $136,888,838

    2021 Property taxes, levied for general purposes $142,006,418

2022 Property taxes, levied for general purposes $144,160,877

2023 Property taxes, levied for general purposes $142,076,648

that is spent on unadulterated socialist fraudulent spending for employee compensation to a 2nd pension system that is not disclosed in the fraudulently issued and fraudulently audited financial statements that are certified with a CPA opinion from three (3) different auditors in four (4) years in which each auditor never disclosed or audited the defined benefits of the 2nd pension system which is allegedly for the benefits of the definition of a statutory county employee of the Defendant County of Rockland, New York. Defendant County of Rockland, New York overpaid compensation to the 2nd pension system based upon exceeding the salary payments to the Defendant's County of Rockland, New York's employees and concealed the fraudulent 2nd retirement spend with continuously changing the defined benefit retirement actuarial and statistical computations with the inputs fraudulently changing and fraudulenlty revising the computations of the Defendant County of Rockland, New York that states in the notes to the fraudulent audited financial statements that:

**Other Postemployment Benefit Obligations Payable**

In addition to providing pension benefits, the primary government and its College component unit provide certain health care benefits for retired employees through a single-employer defined benefit plan. The various collective bargaining agreements stipulate the employees covered and the percentage of contribution. Contributions by the primary government and its College component unit may vary according to length of service. Substantially all employees may become eligible for those benefits if they reach normal retirement age while working for these entities. The cost of retiree health care benefits is recognized as an expenditure/expense as claims are paid.

and further stating:

Actuarial valuations for OPEB plans involve estimates of the value of reported amounts and assumptions about the probability of events far into the future. These amounts are subject to continual revision as results are compared to past expectations and new estimates are made about the future. Calculations are based on the OPEB benefits provided under the terms of the substantive plan in effect at the time of each valuation and on the pattern of sharing of costs between the employer and plan members to that point. The actuarial calculations of the OPEB plan reflect a long-term perspective.

Clearly stated, Defendant County of Rockland, New York paid whatever amounts the Defendant County of Rockland, New York wanted to pay into the 2nd retirement system and justified the fraudulent spend and fraudulent payments with accruing liabilities and with the making of False Claims to the United States Federal Government and the New York State Government and spending such money fraudulently by fraudulently changing the defined benefit plan benefits, calculations, eligibility, and whatever other terms that the Defendant County of Rockland, New York wanted to create with the nondisclosed, unaudited, unlegislated 2nd pension retirenebt system that was created and remains under the dominion and control of the county executive and chief fiscal officer and remains in existence based upon fraudulent communications from Defendant County of Rockland, New York for money and spending of such money fraudulently.

Defendant County of Rockland, New York, a municipal corporation that was and is not a business operating in the free market economy was operating under the subversive doctrine of SOCIALISM and SOCIALIST fraudulent spending with documented communications and written falsehoods stated in the Defendant County of Rockland, New York's fraudulent audited financial reports by not including meaningful financial information and financial documentation for the Defendant's County of Rockland, New York's fraudulent defined benefit retirement computations using various actuary firms including software that does not consider the employer and employee collective bargaining agreement or employment contracts or the fraudulent defined benefit retirement system and plan since the 2nd retirement system is based upon false claims and fraudulent communications including fraudulent mathematical computations.

American Economist Milton Friedman offers insight with concluding his 1970 article by addressing the issue of Fraud that is apropos to the Defendant County of Rockland, New York:

"That is why, in my book "Capitalism and Freedom," I have called it a "fundamentally subversive doctrine" in a free society, and have said that in such a society, "there is one and only one social responsibility of business—to use its resources and engage in activities designed to

increase its profits so long as it stays within the rules of the game, which is to say, engages in open and free competition without deception or fraud."

Defendant County of Rockland, New York conspiring with Defendant Town of Clarkstown restricted the construction of new housing in open space during calendar years 2020, 2021, 2022, and 2023 that increased real estate taxes in the Town of Clarkstown in Rockland County, NY and Defendant County of Rockland, New York made and makes fraudulent communications for money and False Claims to the United States Federal Government and State of New York Government and spends such money fraudulently with making fraudulent payments of more than $100,000,000 million dollars which is more then 3.5% of the revenues of $2,780,206,261 that the Defendant County of Rockland, New York received and controlled from calendar years 2020 through 2023 that is the result of no financial internal controls or operational internal controls or capital improvement spending because payments to the 2nd pension system exceeded the collective bargaining agreement and employment salaries based upon the metrics of hours worked and salaried employees compared to the employment documentation.

Plaintiff's Michael Buxbaum's Memorandum of Law is in support of the Notice of Motion filed with the United States District Court Southern District of New York seeking an ORDER for the REMOVAL of Edwin Day from the office of county executive and an ORDER for the REMOVAL of Stephen F. DeGroat, CPA Commissioner of Finance & Budget from the office of chief fiscal officer of Defendant County of Rockland, New York for making fraudulent communications for money and False Claims to the United States Federal Government and the State of New York Government for money and spending such money fraudulently in violation of the United States False Claims Act and the New York State False Claims Act.

Plaintiff _____

**The Court is in receipt of *pro se* Plaintiff's motion seeking to remove certain Rockland County officials. *Pro se* Plaintiff's motion is DENIED without prejudice to renew for failure to follow the Court's Individual Rules of Practice. The Clerk of Court is directed to terminate the motion at ECF No. 64 and to mail a copy of this endorsement to *pro se* Plaintiff at his address as it is listed on ECF and show service on the docket.**

Dated: May 13, 2025
White Plains, NY


SO ORDERED:
NELSON S. ROMÁN
United States District Judge

Michael Buxbaum
7491 N Federal Hwy
125
Boca Raton FL 33487



**USPS CERTIFIED MAIL**

9214 8901 4298 0417 6353 60



0011539549000011
United States District Court
Southern District of New York
500 Pearl Street
New York NY 33487
USA



RECEIVED
MAY 06 2025
PRO SE OFFICE